# United States Court of Appeals
## For the First Circuit

No. 23-1238

JOSEPH A. JAKUTTIS,

Plaintiff, Appellant,

v.

TOWN OF DRACUT, a municipal corporation and public employer;
DAVID J. CHARTRAND, JR., in his individual and official
capacity; MICHAEL V. O'HANLON, in his individual capacity;
RICHARD P. POIRIER, JR., a/k/a John Doe 2; DEMETRI MELLONAKOS,
a/k/a John Doe; UNITED STATES,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

Laurence E. Sweeney for appellant.
Michael L. Fitzgerald, Assistant United States Attorney, with
whom Joshua S. Levy, Acting United States Attorney, was on brief,
for appellees Michael V. O'Hanlon, Richard P. Poirier, Jr., and
United States.
Thomas R. Donohue, with whom Leonard Kesten, Deidre Brennan
Regan, and Brody, Hardoon, Perkins, & Kesten, LLP were on brief
for appellee Town of Dracut, with whom Joseph A. Padolsky, Douglas
I. Louison, and Louison, Costello, Condon & Pfaff were on brief
for appellee David J. Chartrand, Jr., and with whom Adam Simms,
Justin L. Amos, and Pierce Davis & Perritano, LLP were on brief

for appellee Demetri Mellonakos.

_____

March 7, 2024

_____

**BARRON**, **Chief Judge**.  This appeal concerns a challenge to the dismissal of, and grant of summary judgment to the defendants on, various federal and state claims that were brought by Joseph A. Jakuttis -- a former member of the Dracut, Massachusetts police department.  The claims are against, respectively, the Town of Dracut ("Dracut"), high-ranking Dracut police officers, and members of a federal law-enforcement task force on which Jakuttis served while he was still employed by the Dracut Police Department ("DPD").  All the claims relate to actions that were allegedly taken against Jakuttis in response to his reports of wrongdoing in the DPD.  We affirm in part and remand in part.

## I.

Jakuttis is a former officer and detective in the DPD. From summer 2013 until fall 2015, he also served as a Task Force Officer ("TFO") for the federal Drug Enforcement Administration's ("DEA") Cross Borders Initiative ("CBI").  The defendants are Dracut, David J. Chartrand, Jr., Michael V. O'Hanlon, Richard P. Poirier, Jr., Demetri Mellonakos, and the United States.

Jakuttis first filed the underlying suit in Massachusetts state court in December 2016.  In the operative complaint, he brought multiple claims against Dracut, Chartrand, O'Hanlon, Mellonakos, and Poirier, including claims under 42 U.S.C. § 1983, the Massachusetts Civil Rights Act ("MCRA"), and

the Massachusetts Whistleblower Act. He also brought claims against O'Hanlon and Poirier pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), for their alleged violation of his right to free speech under the First Amendment of the U.S. Constitution.

All the claims pertain to Jakuttis's allegations that, as "a police officer and detective for the Town of Dracut, Massachusetts, and an officer for the DEA working on a special drug task force," he "was removed from the DEA task force and removed from the detective unit on the Dracut police department and demoted to patrolman in retaliation for [him] coming forward with information which implicated two Dracut police officers in serious criminal activities [involving police corruption]." Jakuttis further alleged in his complaint that he "obtained the information implicating the two Dracut police officers from a confidential drug informant, and . . . [he] felt compelled and obligated as a citizen to report the alleged criminal activity . . . to the federal government, which he did."

In December 2016, the United States removed the case to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 2679, or the Westfall Act. That statute provides that

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the

- 4 -

> time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed . . . by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending.

Id. at § 2679(d)(2).

The Amended Notice of Removal, filed by O'Hanlon and signed by the then-serving United States Attorney for the District of Massachusetts, stated that both O'Hanlon and Poirier "were at all relevant times employed by the Drug Enforcement Agency, an agency of the United States[,]" and "[t]he acts complained of, if they occurred at all, were acts by Defendants O'Hanlon and Poirier within the scope of their employment as employees of the United States." O'Hanlon and Poirier thereafter moved to substitute the United States "as [the party] defendant" and argued that any "litigation" of claims against O'Hanlon and Poirier would thereafter be "governed by the Federal Tort Claims Act (FTCA)." Osborn v. Haley, 549 U.S. 225, 230 (2007).

Jakuttis filed a "Notice of Objection to Certification by U.S. Attorney as to Scope of Employment Determination Under 28 U.S.C. § 2679(d)(2)" but later withdrew the objection and disclaimed any challenge to Poirier's and O'Hanlon's scope of employment moving forward. Jakuttis also voluntarily dismissed any FTCA claims he may have had against O'Hanlon and Poirier but explicitly stated that he was "NOT [dismissing] any state tort

- 5 -

claims under Massachusetts law as to defendant Poirier." Jakuttis claimed that the state claims remained "viable against defendant Poirier in his capacity as a state employee and that [Poirier's] second job as a federal task force officer does not eliminate [the] applicability of state tort law."

In an "Order of Substitution of the United States as Defendant" filed on April 25, 2017, the District Court dismissed all Massachusetts state-law claims against O'Hanlon and Poirier "on the ground that the exclusive remedy for these claims is an action against the United States and because the United States has been substituted as the sole defendant on these claims." Then, on May 1, 2017, O'Hanlon and Poirier jointly filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6), and on August 9, 2017, the District Court granted their motion on Jakuttis's § 1983 and Bivens claims against them.

Dracut, Mellonakos, and Chartrand thereafter moved on July 31, 2019, for summary judgment on Jakuttis's remaining claims. The District Court granted the motions on February 14, 2023. Jakuttis timely appealed.

**II.**

We start with Jakuttis's challenges to the District Court's rulings on the federal claims. Jakuttis makes no argument on appeal that the District Court erred in granting summary judgment to Dracut on his § 1983 claim against the town, so that

ruling is not before us here. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) ("Our precedent is clear: we do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief."). We also can easily dispense with Jakuttis's challenge to the District Court's dismissal of the Bivens claims against O'Hanlon and Poirier because those claims are plainly barred by Egbert v. Boule, 596 U.S. 482, 499 (2022), which held that "there is no Bivens action for First Amendment retaliation."

There remains to address with respect to Jakuttis's challenges to the District Court's rulings on the federal claims his challenges to (1) the dismissal of his § 1983 claim against Poirier, in which he alleges that Poirier retaliated against him in violation of the First Amendment for having reported misconduct in the DPD, and (2) the grant of summary judgment to Chartrand and Mellonakos on his § 1983 claims against them, which were for their alleged retaliation against Jakuttis in violation of the First Amendment for having reported such misconduct. We see no merit to either challenge.

**A.**

To succeed in his challenge to the District Court's ruling dismissing the § 1983 claim against Poirier, Jakuttis must fend off Poirier's contention that the complaint fails to plausibly allege that Poirier was acting under color of state rather than

federal law at all the times relevant to the claim, as Poirier could be liable under § 1983 for his alleged conduct only if Poirier were acting under color of state law at those times. See West v. Atkins, 487 U.S. 42, 49 (1988). The determination of whether Poirier was clothed with state authority rather than federal authority at the relevant times depends on the level of government to which Poirier's allegedly unlawful conduct is "fairly attributable." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). That determination, in turn, depends on the "nature and circumstances" of Poirier's allegedly unconstitutional retaliatory conduct "and the relationship of that conduct to the performance of . . . official duties." Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995). As we will explain, we conclude on de novo review and reading the complaint in the light most favorable to Jakuttis, see Vázquez-Ramos v. Triple-S Salud, Inc., 55 F.4th 286, 293 (1st Cir. 2022); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011), that the complaint fails to plausibly allege that Poirier was acting under color of state rather than federal law at the relevant times.

The complaint alleges that Poirier was informed of the Confidential Source's ("CS") allegations regarding misconduct in the DPD while Poirier was working as a federal TFO, that the CS was interviewed in the CBI office soon after by both Poirier and Jakuttis, that Poirier called Jakuttis a "rat" and a liar first at

- 8 -

a meeting in the CBI office in July 2015, and that Poirier did so again at another meeting, again in the CBI office, in August 2015. Thus, the complaint alleges that Poirier learned of the police-corruption allegations while on the job as a federal TFO, investigated those allegations as a federal TFO, and allegedly retaliated against Jakuttis while working as a federal TFO and in the CBI offices.

True, the complaint alleges that Poirier was a state trooper at all relevant times. But, from the face of the complaint, the "nature and circumstances" of Poirier's alleged retaliatory conduct were related to "the performance of his official duties" to the CBI rather than to the Massachusetts state police, Martinez, 54 F.3d at 986, as the mere fact that Poirier was also employed with the Massachusetts state police when these events occurred does not in and of itself suffice on this record to provide a plausible basis for attributing his conduct to anything other than his federal role, see Yassin v. Weyker, 39 F.4th 1086, 1090-91 (8th Cir. 2022) (finding no § 1983 action available against the defendant who was working on a federal task force rather than in her capacity as a state police officer at the relevant times); King v. United States, 917 F.3d 409, 433 (6th. Cir. 2019) (finding no § 1983 action available against the defendant working full time with an FBI task force at the time of the incident at issue rather than in her role as a state

detective), rev'd on other grounds sub nom. Brownback v. King, 141 S. Ct. 740 (2021). We therefore affirm on that basis the District Court's ruling dismissing the claim.

**B.**

We turn our attention, then, to Jakuttis's § 1983 claims against Chartrand and Mellonakos. Although the District Court did not address whether either Chartrand or Mellonakos is protected by qualified immunity against these claims, they each ask us to affirm the grant of summary judgment to them on that basis. Given what the summary-judgment record shows, we conclude that they are entitled to such immunity. See John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26, 37 (1st Cir. 2003) (explaining that a grant of summary judgment may be affirmed on any ground manifest in the record); see also Pleasantdale Condos., LLC v. Wakefield, 37 F.4th 728, 732-33 (1st Cir. 2022) (stating that summary-judgment orders are reviewed de novo).

**1.**

Because Chartrand and Mellonakos are being sued in their individual capacities under § 1983, they are liable for damages only if "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" District of Columbia v. Wesby, 583 U.S. 48, 62-63 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). The qualified immunity they enjoy from such damages

- 10 -

claims, the Supreme Court of the United States has explained, is intended to "protect[] 'all but the plainly incompetent or those who knowingly violate the law.'" White v. Pauly, 580 U.S. 73, 79 (2017) (internal quotation marks omitted) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)). Accordingly, although there need not be "a case directly on point, . . . existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

The Supreme Court has also repeatedly emphasized that the qualified-immunity inquiry "focus[es] on 'the objective legal reasonableness of an official's acts.'" Crawford-El v. Britton, 523 U.S. 574, 590 (1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)). Thus, if an objectively reasonable official in Chartrand's or Mellonakos's shoes "might not have known for certain that the[ir] conduct was unlawful," then Chartrand and Mellonakos "[are] immune from liability." Ziglar v. Abbasi, 582 U.S. 120, 152 (2017). Otherwise, neither is. See id.

### 2.

The First Amendment retaliation claim that Jakuttis brings against, respectively, Chartrand and Mellonakos turns, at least in significant part, on whether Jakuttis made the report of misconduct in the DPD that he claims occasioned the allegedly unlawful retaliation while "speaking as [a] citizen[][,]" Lane v. Franks, 573 U.S. 228, 237 (2014) (quoting Garcetti v. Ceballos,

- 11 -

547 U.S. 410, 421 (2006)), rather than as part of his "official duties[,]" Garcetti, 547 U.S. at 421. After all, Jakuttis acknowledges that the First Amendment retaliation claim at issue cannot proceed against either Chartrand or Mellonakos unless the speech in question -- his report of misconduct in the DPD -- qualified as "citizen speech." Lane, 573 U.S. at 237.

Jakuttis contends, however, that the summary-judgment record clearly shows that Chartrand and Mellonakos retaliated against him for engaging in speech as a citizen -- and not as part of his official duties -- because it is clear from that record that he was not engaging in the speech that was the target of their allegedly adverse actions in fulfilling official duties that he owed to either the federal Task Force or the DPD. To support his position, Jakuttis makes various contentions about the summary-judgment record. Specifically, he contends that the summary-judgment record makes plain that he reported the allegations of DPD police corruption to his CBI chain of command, not his DPD chain of command; he reported the allegations at the CBI office rather than at the DPD offices; and he obtained such knowledge while he was working with the CBI, not with the DPD.

Jakuttis further contends that, because his duties at the CBI did not involve investigating DPD corruption, his reporting of these allegations was not part of his official duties, either as a DPD employee or TFO. If Jakuttis were right that the summary-

- 12 -

judgment record clearly showed that he had made the report of misconduct in the DPD that was the target of the allegedly adverse actions by Chartrand and Mellonakos independent of his official duties as either a TFO or a DPD employee, then we would agree that neither Chartrand nor Mellonakos would be entitled to summary judgment based on qualified immunity on the ground that it was not clear to them that the speech in question was "citizen speech." Id. In that event, it would have been clear to a reasonable person in Chartrand's or Mellonakos's shoes that Jakuttis had engaged in the speech as a citizen because neither Chartrand nor Mellonakos then would have had any reason to believe that the speech had been made as part of Jakuttis's official duties in any respect. See Ziglar, 582 U.S. at 152. But, we do not agree with Jakuttis's characterization of the summary-judgment record.

Starting with Chartrand, it is plain from even Jakuttis's own account of the record that a person in Chartrand's position reasonably could have understood that the report of the alleged misconduct was being conveyed to him as part of Jakuttis's official duties as a member of, if not the DPD, then at least the Task Force, and so not independent of his duties to either entity. The record conclusively establishes that the report was conveyed to Chartrand during an official Task Force meeting, which Chartrand had been asked to attend in his capacity as a supervisor in the DPD. The context in which the report was being conveyed,

therefore, made it reasonable for Chartrand to conclude that the report was being conveyed in connection at least with Jakuttis's duties as a TFO, as it is not as if the speech were being made outside the office or during a time in the office when the relevant parties were on break. Thus, we cannot say it would have been clear to Chartrand that Jakuttis was speaking solely as a citizen on the ground that, when Jakuttis engaged in the speech at issue, it was not as part of his official duties as either a TFO or DPD employee.

The same is true as to Mellonakos. That is, based on the summary-judgment record, a person in Mellonakos's position reasonably could have understood that Jakuttis's report of Mellonakos's alleged misconduct was being conveyed as part of Jakuttis's official duties as either a TFO or DPD employee. Indeed, there is nothing in the record to indicate that Mellonakos would have had any reason to understand that Jakuttis had made any statement to Chartrand regarding misconduct in the DPD in any capacity other than in Jakuttis's capacity as a member of the DPD or as a TFO.

In that regard, Jakuttis claims that Chartrand told Jakuttis that Mellonakos "no longer want[ed] him in the detective bureau, so [Jakuttis couldn't] return there" soon after Jakuttis made Chartrand aware that he was being let go from the CBI. And Jakuttis appears to rely solely on this statement as the predicate

for the claim that the alleged adverse action Mellonakos took against him constituted retaliation for his report of misconduct in the DPD. Thus, we see no basis in the summary-judgment record on which a reasonable juror could find that it is more likely than not that Mellonakos would have understood Jakuttis to have been speaking independent of any official duties Jakuttis owed as a TFO or DPD employee in speaking in the way that occasioned Mellonakos's allegedly adverse actions toward Jakuttis. See Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005) ("Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation.").

Jakuttis appears to be separately contending, however, that it is at least clear from the summary-judgment record that he was engaged in the speech at issue solely as part of his official duties for the Task Force, not the DPD. And that is so, he contends, based on the same record evidence he identifies in contending that it was clear he was speaking solely independent of any such duties. He then appears to be contending that, because the record is clear in showing that, at most, he engaged in the speech in his capacity as a TFO, the speech still clearly was, as to Chartrand and Mellonakos, merely citizen speech, precisely because neither Chartrand nor Mellonakos had any role as members

of the Task Force, as each of them was instead affiliated solely with the DPD.

We may assume for present purposes that Jakuttis is right that it is clearly established that a police supervisor or fellow police officer may not retaliate against an employee in their police department for speech that employee made as part of their official duties owed to a different law-enforcement agency (a proposition about which we express no view).  For, even accepting that proposition, we conclude that the record establishes that it would not have been clear to a reasonable person in either Chartrand's position or Mellonakos's position that Jakuttis was conveying the report of misconduct in his capacity as a TFO rather than in his capacity as a DPD employee.  And, because Chartrand and Mellonakos reasonably could have understood Jakuttis to have been making the report of misconduct in the DPD as part of his official DPD duties, they are entitled to summary judgment based on qualified immunity on the ground that it was not clear to them that the speech that allegedly occasioned their unlawful retaliation was "citizen speech."  Lane, 573 U.S. at 237.

Our decision in Eves v. LePage regarding the First Amendment retaliation claim under § 1983 there at issue is instructive as to this last point.  927 F.3d 575 (1st Cir. 2019) (en banc).  In that case, the defendant, a state governor, was alleged to have violated the plaintiff's First Amendment rights to

political affiliation and freedom of association when the defendant threatened to withhold state discretionary funding from a nonprofit organization that operated a charter school for at-risk children if the nonprofit organization did not terminate its employment contract with the plaintiff, a state representative. Id.

The question turned on whether the plaintiff's employment position was a "policymaking position." Id. at 577. We explained that the defendant could have reasonably believed that the employment position was a policymaking position, and a "policymaker" can be lawfully discharged based on their political affiliation. Id. at 584. Thus, we concluded that the defendant was entitled to qualified immunity, id. at 589, because, even if the defendant was mistaken in thinking that the position in question was a policymaking position, it was not clear that the position was not a position of that kind, thereby rendering any misjudgment on that score a reasonable mistake, see id. at 588.

Here, the situation is similar. And that is true as to both Chartrand and Mellonakos.

Starting with Chartrand, as we have explained, the summary-judgment record conclusively establishes that Jakuttis (while a DPD employee) asked Chartrand to come to the CBI office to be informed of the report in a meeting in which Jakuttis was present and that Chartrand did so as a supervisor in the DPD.

Thus, Chartrand reasonably could have understood that Jakuttis -- though detailed out to the DEA's CBI at the time -- had a continuing duty to report any police-corruption allegations Jakuttis learned of as part of his official DPD job duties, given that Jakuttis was still rostered to the DPD and paid by the DPD, and so was reporting the misconduct to Chartrand as his DPD supervisor as part of Jakuttis's official DPD duties rather than as part of Jakuttis's official TFO duties. And even if Chartrand may have been mistaken in that understanding, qualified immunity still protects him in making that reasonable assessment just as it protected the defendant in Eves in reasonably making the analogous assessment at issue there.

As for Jakuttis's First Amendment retaliation claim against Mellonakos, as we have already explained, Jakuttis contends that the summary-judgment record, when read in the light most favorable to Jakuttis, shows that Chartrand told Jakuttis that Mellonakos "no longer want[ed] him in the detective bureau, so [Jakuttis could not] return there." And Jakuttis appears to rely solely on this statement as the predicate for the claim that the alleged adverse action Mellonakos took against him constituted retaliation for his report of misconduct in the DPD. But, the record is such that Mellonakos reasonably could have believed that Chartrand conveyed the misconduct allegations to him in Chartrand's capacity as a DPD supervisor and that Chartrand had

- 18 -

learned of the allegations by the fact of Jakuttis having made them to Chartrand as part of Jakuttis's duty as a DPD employee to report DPD misconduct to his DPD supervisor. See id. Indeed, there is nothing in the record to indicate that Mellonakos would have had any reason to understand that Jakuttis had made any statement to Chartrand regarding misconduct in the DPD in any capacity other than in Jakuttis's capacity as a member of the DPD. See Ingram, 414 F.3d at 228-29.

Thus, the record compels the conclusion that Mellonakos, like Chartrand, reasonably could have understood that Jakuttis was reporting the corruption allegations as part of his official DPD job duties, despite being detailed out to the DEA's CBI at the time. As a result, we conclude that Mellonakos is entitled to summary judgment based on qualified immunity on Jakuttis's First Amendment § 1983 claim as well, based on the same Eves-based reasoning that leads us to reach that conclusion as to Chartrand.

## III.

We turn now to the merits of Jakuttis's challenges to the District Court's rulings on the various state-law claims. As we will explain, we may affirm the rulings as to many of them because it is evident there is no merit to Jakuttis's challenges to those rulings. But, as to a couple of the claims at issue, we conclude that the prudent course is for us to exercise our discretion to remand them to the District Court so that it may

then exercise its discretion to remand them to state court, as there is federal-court jurisdiction over these claims solely as a matter of our supplemental jurisdiction under 28 U.S.C. § 1367. See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims."); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017) ("[I]t can be an abuse of discretion -- if no federal claim remains -- for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts.").

## A.

First up is Jakuttis's challenge to the District Court's grant of summary judgment to Chartrand and Mellonakos on Jakuttis's claims against them under the MCRA.  To establish a claim under the MCRA, Jakuttis "must prove that (1) [his] exercise of enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) [has] been interfered with, or attempted to be interfered with, and (3) that the interference

or attempted interference was by threats, intimidation or coercion." Buster v. George W. Moore, Inc., 783 N.E.2d 399, 408 (Mass. 2003) (internal quotation marks omitted) (quoting Freeman v. Plan. Bd. of W. Boylston, 646 N.E.2d 139, 148 (Mass. 1995)).

Jakuttis argues that Chartrand and Mellonakos interfered with his federal constitutional right to free speech by retaliating against him "for exercising that right by removing [him] from his role as a detective and demoting him back to patrol following his disclosure of corruption within the Dracut police." In other words, Jakuttis's claim under the MCRA is, in essence, the same as his claim for First Amendment free-speech retaliation under § 1983 discussed previously. Indeed, Jakuttis incorporates many of the same arguments in challenging the District Court's summary-judgment ruling as to this claim that he makes in challenging the District Court's grant of summary judgment on the § 1983 claim.

But just as a § 1983 defendant may be entitled to qualified immunity, a MCRA defendant may be as well. As the Massachusetts Supreme Judicial Court (SJC) has explained, "Government officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Barron v. Kolenda, 203 N.E.3d 1125, 1141 (Mass. 2023) (alteration omitted) (quoting LaChance v. Comm'r of Corr., 978 N.E.2d 1199, 1207 (Mass. 2012)). "More

specifically, a right is only clearly established if, at the time of the alleged violation, the contours of the right allegedly violated were sufficiently definite so that a reasonable official would appreciate that the conduct in question was unlawful." Id. (cleaned up) (quoting LaChance, 978 N.E.2d at 1207).

In Section II.B, we explained that Chartrand's and Mellonakos's alleged conduct did not violate "clearly established" federal law as to a First Amendment retaliation claim, Wesby, 583 U.S. at 63, because a reasonable person in their situations would not have concluded that the constitutional question was placed beyond doubt in Jakuttis's favor, given that Chartrand could have understood Jakuttis's report to him of misconduct in the DPD to have been made as part of Jakuttis's official duties as a DPD employee and that Mellonakos learned of the report from Chartrand. Thus, we granted qualified immunity to Chartrand and Mellonakos on Jakuttis's § 1983 claim against them on that basis.

Chartrand expressly incorporates his arguments in defense of the § 1983 claim against him in response to Jakuttis's challenge to the grant of summary judgment on the MCRA claim against Chartrand. And Mellonakos also asserts qualified immunity as a defense to the MCRA claim against him. Thus, because Jakuttis's MCRA claim against Chartrand and Mellonakos is premised on the same right -- a federal First Amendment right to free speech -- and the same allegedly retaliatory actions as his claim against

- 22 -

Chartrand and Mellonakos under § 1983 is, we incorporate the same analysis of qualified immunity discussed in Section II.B here to Jakuttis's MCRA claim against Chartrand and Mellonakos. For those reasons, we hold that Chartrand and Mellonakos are entitled to qualified immunity against Jakuttis's MCRA claim. See Barron, 203 N.E.3d at 1141.

**B.**

Jakuttis also appeals the dismissal of counts four through six of his operative complaint. As relevant for our purposes, those claims are Massachusetts-law tort claims against Poirier for Intentional Interference with Advantageous Economic Relationship, Intentional Interference with Contractual Relations and/or Advantageous Relationship, and Intentional Infliction of Emotional Distress. There is no merit to any of these challenges.

As we noted in Part I, the District Court determined that these claims had to be dismissed pursuant to the Westfall Act because the Attorney General's designee certified that Poirier was acting within the scope of his federal employment during all the relevant times. And while Jakuttis could have objected to that certification, De Martinez v. Lamagno, 515 U.S. 417, 420 (1995), he ultimately chose not to do so. Moreover, to the extent that Jakuttis attempts to object to the scope-of-employment certification on appeal, he not only has forfeited his right to raise this issue on appeal but also explicitly waived it when he

filed a "Plaintiff's Notice of Withdrawal of Objection to the U.S. Attorney's Certification as to Scope of Employment" with the District Court. See, e.g., Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 14 n.2 (1st Cir. 2007) ("A party waives a right only if he intentionally relinquishes or abandons it; he forfeits a right by failing to assert it in a timely manner."). And, to the extent that Jakuttis contends that the Massachusetts-law tort claims against Poirier could somehow persist despite the scope-of-employment certification, we see no basis for so concluding, as the certification does not provide for any exceptions to its scope. Thus, the District Court was correct to have dismissed the claims.

## C.

There remains to be addressed the District Court's awards of summary judgment to Dracut for the Massachusetts Whistleblower Act claim and to Chartrand and Mellonakos for the Intentional Interference with Advantageous Economic Relationship claim against them. As we will explain, we conclude that the prudent course is for us to exercise our discretion to remand these claims to the District Court so that the District Court may then exercise its discretion to remand them to state court, as there is federal-court jurisdiction over the claims solely as a matter of supplemental jurisdiction under 28 U.S.C. § 1367. See Rodriguez, 57 F.3d at 1177.

With respect to the Massachusetts Whistleblower Act claim, Mass. Gen. Laws ch. 149, § 185(b)(2) protects, in relevant part, employees who "[p]rovide[] information to, or testif[y] before, any public body conducting an investigation, hearing or inquiry into any violation of law." Though Jakuttis's initial report of the CS's allegations to O'Hanlon arguably cannot be the basis for a whistleblower action under § 185(b)(2), as the report predated any DEA or other investigation into the officers' drug activity, Jakuttis's later participation in the DEA investigation of the CS's allegations may constitute protected action as defined by § 185(b)(2). And there is arguably a basis to conclude that Jakuttis's speech, assuming it is protected activity under the Act, was a "determinative cause" of Dracut's decision to take the allegedly adverse employment action against him of moving him from the detective unit to the patrol unit. Edwards v. Commonwealth, 174 N.E.3d 1153, 1168 (Mass. 2021). Accordingly, it would be prudent for reasons of comity for the state-law question on which the claim turns to be resolved by a state court. See Gibbs, 383 U.S. at 726.

Finally, we conclude that the Intentional Interference with Advantageous Economic Relationship claim against Chartrand and Mellonakos should also be remanded to the District Court such that the District Court may then exercise its discretion to remand the claim to state court.

"To make a successful claim for intentional interference with advantageous [economic] relations," Jakuttis has to prove that "(1) he had an advantageous relationship with a third party (e.g., a[n] . . . employment relationship); (2) [defendants] knowingly induced a breaking of the relationship; (3) [defendants'] interference with the relationship [was] intentional [and] improper in motive or means; and (4) [Jakuttis] was harmed by [defendants'] actions." Blackstone v. Cashman, 860 N.E.2d 7, 12-13 (Mass. 2007).

In addition, under the third prong, "[p]roof of actual malice is required when an employee is claiming a supervisor has intentionally interfered with the employee's advantageous relationship with the employer or a corporate official is acting in an official capacity." Fountain v. City of Methuen, 630 F. Supp. 3d 298, 317 n.4 (D. Mass. 2022). The SJC has defined "actual malice" as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest[,]" Blackstone, 860 N.E.2d at 13 (quoting Wright v. Shriners Hosp. for Crippled Child., 589 N.E.2d 1241, 1246 (Mass. 1992)), and has clarified that, at least in some circumstances, evidence of retaliation alone is not enough to warrant a finding of improper motive, see Wright, 589 N.E.2d at 1246.

As to Chartrand, Jakuttis concedes that Chartrand "is arguably a 'corporate official'" such that actual malice must be

shown for Jakuttis's claim against Chartrand to succeed. However, although the summary-judgment record read in the light most favorable to Jakuttis arguably shows at least that Chartrand retaliated against Jakuttis for reporting misconduct in the DPD, it is unclear whether that retaliation rises to the level of "actual malice" required of a corporate official -- that is, whether Chartrand acted with "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Blackstone, 860 N.E.2d at 13 (quoting Wright, 589 N.E.2d at 1246). Accordingly, it would be prudent for reasons of comity for the state-law question on which this claim turns to be resolved by a state court. See Gibbs, 383 U.S. at 726.

As to Mellonakos, there is an open question as to whether he was Jakuttis's "supervisor" or a "corporate official" at the relevant times such that the "actual malice" standard applies to him. Fountain, 630 F. Supp. 3d at 317 n.4. Mellonakos appears to contend that the "actual malice" standard applies, id., because he was (and still is) employed as a lieutenant detective in the DPD. Jakuttis contends, however, that the "actual malice" standard, id., does not apply to Mellonakos. To the District Court, Jakuttis argued that Mellonakos was not his supervisor because Mellonakos "was out on injury" during the relevant times. We think it prudent to leave it to the state court to resolve whether Mellonakos was

a "supervisor" or "corporate official" such that the "actual malice" standard applies here. Id.; see Gibbs, 383 U.S. at 726.

**IV.**

The District Court's award of summary judgment to Dracut, Chartrand, and Mellonakos and grant of Poirier's motion to dismiss for the § 1983 claim are **affirmed**. The District Court's grant of Poirier's and O'Hanlon's motion to dismiss for the Bivens claim is **affirmed**. The District Court's dismissal of the Intentional Interference with Advantageous Economic Relationship, Intentional Interference with Contractual Relations and/or Advantageous Relationship, and Intentional Infliction of Emotional Distress claims against Poirier is **affirmed**. The District Court's award of summary judgment to Mellonakos and Chartrand for the MCRA claim is **affirmed**. Finally, we **remand** the Massachusetts Whistleblower Act claim against Dracut and the Intentional Interference with Advantageous Economic Relationship claim against Chartrand and Mellonakos to the District Court. The parties shall bear their own costs.