# United States Court of Appeals
### For the Eighth Circuit
_____

No. 20-3299
_____

Ifrah Yassin

*Plaintiff - Appellant*

v.

Heather Weyker, individually and in her official capacity as a St. Paul Police
Officer

*Defendant - Appellee*

The City of St. Paul; John Does 1-2, individually and in their official capacities as
St. Paul Police Officers; John Does 3-4, individually and in their official capacities
as supervisory members of the St. Paul Police Department

*Defendant*s
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 15, 2021
Filed: July 14, 2022
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

The question in this case is whether a St. Paul police officer acted under color of state law when she allegedly lied to protect a federal witness while serving on a federal task force. *See* 42 U.S.C. § 1983. The district court[1] concluded that she did not, and we affirm.

## I.

This is the third chapter in a series of civil-rights lawsuits brought against Heather Weyker for her role in a federal sex-trafficking investigation. In addition to her full-time position as a St. Paul police officer, she was cross-deputized as a federal agent to investigate an interstate sex-trafficking scheme. Many were charged, but none were convicted. *See United States v. Fahra*, 643 F. App'x 480, 488–89, 494 (6th Cir. 2016); *United States v. Adan*, 913 F. Supp. 2d 555, 558–559, 567 (M.D. Tenn. 2012). The attention soon turned to Weyker, who faced lawsuits from at least 21 of the people she came across during the investigation. *See, e.g.*, *Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020); *Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019).

## A.

Ifrah Yassin was one of them. Perhaps the most accidental of participants, she and her friends only became involved because of a dangerous encounter with Muna Abdulkadir, who was a witness in the federal sex-trafficking investigation. A verbal confrontation turned physical, and Abdulkadir eventually "struck Yassin . . . while brandishing a knife." *Ahmed*, 984 F.3d at 566 (quotation marks and brackets omitted). After Yassin called 911, Minneapolis police officer Anthijuan Beeks arrived on the scene. He reviewed available security footage and interviewed the participants while Abdulkadir hid in a friend's apartment nearby.

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Meanwhile, Abdulkadir made a call of her own. It was to Weyker, who was actively working on the sex-trafficking investigation in Nashville. Fearing arrest, Abdulkadir falsely claimed that Yassin started the dispute, allegedly because she was angry that her boyfriend was a defendant in the sex-trafficking case.

When Weyker called Officer Beeks, she identified herself as both a St. Paul police officer and a member of a federal task force. She also introduced others in the room, including the lead federal prosecutor and another federal agent. Weyker's message was clear: Abdulkadir was a witness in a federal investigation and the other women involved in the fight had, upon "information and documentation," been out "to intimidate" her. She then repeated the same story to a supervising officer.

It was true that Abdulkadir was a federal witness, but everything else Weyker said was false. There was no "information" or "documentation." And she knew nothing about Yassin, aside from what Abdulkadir had told her. Yet Yassin and her friends were arrested for witness tampering. *See* Minn. Stat. § 609.498.

Federal charges came the next day. In Weyker's affidavit supporting the criminal complaint against Yassin and her friends, she identified herself as an "FBI Task Force Officer / St Paul MN PD Officer." (Capitalization omitted). Otherwise, the affidavit was riddled with inaccuracies, just like her call to Officer Beeks the day before.

The federal criminal complaint charged Yassin and the other women with witness retaliation. *See* 18 U.S.C. § 1513(b); *see also id.* § 1513(g) (providing that the prosecution may be brought "in the district in which the official proceeding . . . was intended to be affected"). The charges against Yassin's friends were eventually dismissed, but not before they each spent about 25 months in federal custody. Yassin was even less fortunate. She did not regain her freedom until after she was tried and acquitted.

B.

This case is about what happens next for Yassin. She seeks to recover on a wrongful-arrest theory against Weyker, whom she has sued in two different capacities: as a St. Paul police officer, *see* 42 U.S.C. § 1983, and as a deputized federal agent, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

There is no dispute that Weyker was clothed with governmental authority when she acted. The question is what type. If the answer is state law, then any claim must arise under 42 U.S.C. § 1983. But if she was acting under color of *federal* law, *Bivens* is the only option. *See Haley v. Walker*, 751 F.2d 284, 285 (8th Cir. 1984) (per curiam) ("Section 1983 creates a remedy to redress a deprivation of a federally protected right by a person acting under color of state law, but is inapplicable to persons acting under color of federal law.").

We are not writing on a blank slate. In *Ahmed v. Weyker*, we concluded that a "*Bivens* remedy [was] off the table" because there were good reasons not to imply "a new cause of action." 984 F.3d at 567, 571. Given that *Ahmed* involved the same facts, there is only one option still on the table: a section 1983 action, but only if Yassin can show that Weyker was acting under color of state law. *Farah*, 926 F.3d at 502.

The parties shifted their focus to the color-of-law question following our first remand in this case. *See id.* After denying a continuance that would have allowed Yassin to conduct further discovery, *see* Fed. R. Civ. P. 56(d), the district court granted Weyker's motion for summary judgment on the ground that her actions arose under color of federal law and no *Bivens* action was available on these facts.

-4-

## II.

We review the district court's decision to grant summary judgment de novo. *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020). "Summary judgment is appropriate when the evidence, viewed in [the] light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

Every section 1983 action has two key elements: (1) "the violation of a right secured by the Constitution and laws of the United States" (2) by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Only the second element is at issue here.

## A.

Mixing the color-of-law inquiry with the summary-judgment standard introduces a complication. Genuine issues of material fact are for juries to resolve. *See Cherne Contracting Corp. v. Marathon Petroleum Co., LLC*, 578 F.3d 735, 740 (8th Cir. 2009). The answer is different for legal questions, which are typically decided by courts, even at summary judgment. *See Aho v. Erie Min. Co.*, 466 F.2d 539, 541 (8th Cir. 1972); Fed. R. Civ. P. 56(a). So which one is the under-color-of-law determination?

It turns out that the Supreme Court has already answered this question. In *Cuyler v. Sullivan*, for example, it made clear that the under-color-of-law determination is a "question of law." 446 U.S. 335, 342 & n.6 (1980); *see also Blum v. Yaretsky*, 457 U.S. 991, 997, 1009 n.20 (1982) (describing the question of "whether there is state action" as one of "several issues of law" and equating "state

action" with "the 'under color of law' requirement of § 1983"). To the extent there is any room left for debate, the predominant view is that it is legal.[2]

We recognize, of course, that the under-color-of-law determination can turn out to be quite "fact[]bound." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982); *see also Farah*, 926 F.3d at 502 (explaining that this inquiry "potentially requires a fact-intensive analysis"). But as long as the underlying material facts are undisputed, courts can decide the question, even when those undisputed facts point in different directions. *See Aho*, 466 F.2d at 541; *see also Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 589 (8th Cir. 2003) (noting that "question[s] of law" may be "resolved by summary judgment provided there are no genuine issues of material fact in dispute").

To be sure, juries still have a role to play when material facts are in dispute. Suppose in this case, for example, that the parties disputed whether Weyker had been cross-deputized as a federal agent. *Cf. Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 (1970) (giving the jury the task of figuring out whether there was a "meeting of the minds" in a federal civil-rights action); *Ernster v. Luxco, Inc.*, 596 F.3d 1000, 1006–07 (8th Cir. 2010) (explaining this principle in the age-discrimination context). In those circumstances, a jury may well need to resolve the factual dispute first,

_____

[2]*See Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 344 n.7 (4th Cir. 2000) ("[T]he ultimate resolution of whether an actor was a state actor or functioning under color of law is a question of law for the court."); *Jennings v. Patterson*, 488 F.2d 436, 438 (5th Cir. 1974) ("[S]tate action within the meaning of Section 1983 [is] an issue of law which should never have been submitted to the jury."); *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002) ("Whether Bridges was acting under color of law is a legal issue."); *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1322 (9th Cir. 1982) (referring to the question of "whether the actions of the towing company, a private entity, were 'under color of state law' for purposes of 42 U.S.C. § 1983" as a "legal question[]"); *Nieto v. Kapoor*, 268 F.3d 1208, 1215 (10th Cir. 2001) (holding that the question of whether a defendant was a state actor for § 1983 purposes "is a question of law that we review de novo" (italics omitted)); *Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1513–14 (11th Cir. 1997) (same).

before the district court can decide the color-of-law question. *Cf. Lee ex rel. Lee v. Borders*, 764 F.3d 966, 970–71 (8th Cir. 2014) (denying the defendant's motion for judgment as a matter of law because, "even in [the defendant's] version of events," he acted under color of state law).

B.

Color of law is rooted in authority. "[I]n a § 1983 action," a defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with [state] authority.'" *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The question is whether the conduct is "fairly attributable to the State." *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (quoting *Lugar*, 457 U.S. at 937). To determine if it is, the focus is on the "nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of . . . official duties." *Magee v. Trs. of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (quotation marks and brackets omitted).

State law had nothing to do with "the nature and circumstances" of Weyker's conduct. *Id.* At the time, she was in Nashville working on a federal task force as a Special Deputy United States Marshal. She introduced the other task-force members in the room during the call, including the lead federal prosecutor and a federal agent. And the witness she was trying to protect, Muna Abdulkadir, was only on her radar because she was assigned to a federal investigation.

Weyker also did not stray from the "performance of [her] official duties" when she spoke to Officer Beeks and his supervising officer. *Id.* As someone who was tasked with "investigative work on the [sex-trafficking] task force," she acted within the scope of those duties by trying to keep a federal witness out of trouble. *See id.* ("Factors [in the color-of-law analysis] include: . . . the motivation behind the officer's actions . . ."). The same goes for her statements in the affidavit she prepared the next day. *See id.*

It is true that Weyker occasionally let her local practices creep into her federal activities. One example was introducing herself as a St. Paul police officer. Another was when she used a St. Paul police form to advise Abdulkadir of her *Miranda* rights. And a third was when she filed an incident report with the St. Paul Police Department, despite preparing an affidavit a short time later to support federal charges against Yassin and her friends.

But these practices do not alter the federal character of what she did. Weyker's work on the federal sex-trafficking investigation led to Yassin's arrest, she acted within the scope of her federal duties while dealing with the situation, and she referenced her federal-task-force role during her conversations with Officer Beeks and his supervisor.[3] *See King v. United States*, 917 F.3d 409, 433 (6th Cir. 2019), *rev'd on other grounds sub nom. Brownback v. King*, 141 S. Ct. 740 (2021) ("As a deputized federal agent, Detective Allen carried federal authority and acted under color of that authority rather than under any state authority he may have had as a Grand Rapids Police detective."). What matters, in other words, is that she "act[ed] or *purport[ed] to act* in the performance of [her federal] duties, even if [s]he overstep[ped] [her] authority and misuse[d] power." *Johnson v. Phillips*, 664 F.3d 232, 240 (8th Cir. 2011) (emphasis added).

Our rule today is straightforward. Without any "actual or purported relationship between [Weyker's] conduct and [her] duties as a [St. Paul] police officer," no section 1983 action is available. *Magee*, 747 F.3d at 535.

---

[3]It also does not make any difference that Weyker worked with Minneapolis police officers. Federal and state officers work together all the time without clouding their distinct sources of authority, and no one here argues that Officer Beeks was acting in concert with Weyker. A joint-action theory, in other words, finds no support in the record. *Compare Wickersham v. City of Columbia*, 481 F.3d 591, 598 (8th Cir. 2007) (holding that a police department's "prearranged role" in carrying out a private company's speech-suppression policy constituted state action), *with Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 870–71 (10th Cir. 2016) (holding that federal agents who gave instructions to local sheriffs' deputies were "better seen as acting under color of *federal* law").

## III.

One loose end remains. Yassin requested a continuance to conduct further discovery. *See* Fed. R. Civ. P. 56(d). In a short order, the district court denied the request. The question for us is whether it abused its discretion. *See Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018) (stating the standard of review).

A party seeking additional discovery under Federal Rule of Civil Procedure 56(d) has to show: "(1) that [she] [has] set forth in affidavit form the specific facts that [she] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014) (quotation marks omitted). Our review of a decision like this one is highly deferential given the district court's "wide discretion" over discovery matters. *Johnson*, 903 F.3d at 772.

The sought-after discovery fell into two broad categories. In the first were facts to rebut the "purported connection" between the sex-trafficking investigation and the fight. The problem with this category is that it would have been of marginal relevance, at least the way Yassin had framed it. Even if she could establish that Weyker was lying—and we can assume that she was—it would not have changed the fact that she did so in her capacity as a federal agent, not as a St. Paul police officer.

Other parts of the discovery request were scattershot. Yassin asked to depose several witnesses, including Weyker and Officer Beeks, and review a long list of documents. It is not clear what she expected to learn, at least as far as the under-color-of-law issue is concerned. *See Toben*, 751 F.3d at 895. To the extent she hoped that someone would say that Weyker failed to identify herself as a federal agent, there was little chance of that happening. Officer Beeks had already described her as one in his police report, which would only have been possible if she had raised her federal role during the call. It was no abuse of discretion for the district court to

recognize that reopening discovery for a "fishing expedition" would have been counterproductive. *Johnson*, 903 F.3d at 772 (citation omitted).

## IV.

We accordingly affirm the judgment of the district court.

_____