**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-1987

———————

JUDITH HENRY

v.

ESSEX COUNTY; DETECTIVE LEONARD JACKSON, in
his individual and official capacity; DETECTIVE DIANE
MUNOZ, in her individual and official capacity; SHERIFF
OFFICER JOSEPH DENEQUOLO, in his individual and
official capacity; SHERIFF OFFICER JANICE GUY, in her
individual and official capacity; SHERIFF OFFICER
NAIMAH MARROW, in his individual and official capacity;
SHERIFF OFFICER JEREMY PEREZ, in his individual and
official capacity; CAPTAIN GARY NASH, in his individual
and official capacity; WARDEN TIMOTHY MATTHEW
BETTI, in his individual and official capacity;
LIEUTENANT JAY RUANE, in his individual and official
capacity; OFFICER KATE DIPIETRO, in her individual and
official capacity; OFFICER GARY LOKE, in his individual
and official capacity; AMY LAURIA, in her individual and
official capacity; LAUREN BIEBER, in her individual and
official capacity; LACKAWANNA COUNTY PRISON;
CAPTAIN SAVAGE, in his individual and official capacity;
LIEUTENANT BECKLEY in her individual and official
capacity; DENISE WOOD, in her individual and official

capacity; JAN LAMPER, in her individual and official capacity; TIMOTHY B. RIEGLE, in his individual and official capacity; DOUGLAS LONG, in his individual and official capacity; ELIZABETH COOPER, in her individual and official capacity; KELLI WINTER, LPN, in her individual and official capacity; KRISTIN ZIERLE LYNN, RN, in her individual and official capacity; MARGARET E. THOMPSON, in her individual and official capacity; OFFICER EULETIA LYNN, in her individual and official capacity; INVESTIGATOR GARY DUNCAN, in his individual and official capacity; SUPERVISORY DEPUTY JERRY SANSERINO, in his individual and official capacity; DEPUTY ANTHONY ROSSI, in his individual and official capacity; ASSISTANT CHIEF DEPUTY PEDRO ALVAREZ, in his individual and official capacity; DENISE R. RAHAMAN, in her individual and official capacity; DR. SALADIN ABDU NAFI, in his individual and official capacity; JAMES NEAL, MD, in his individual and official capacity; LIONEL ANICETTE, MD, in his individual and official capacity

ESSEX COUNTY; DIANE MUNOZ; SHERIFF OFFICER JOSEPH DENEQUOLO; JANICE GUY; SHERIFF OFFICER NAIMAH MARROW; SHERIFF OFFICER JEREMY PEREZ; CAPTAIN GARY NASH,

Third Party Plaintiffs

v.

CFG Health Systems, LLC,

Third Party Defendant

Pedro Alvarez, Jerry Sanseverino, Gary Duncan,
Anthony Rossi, Leonard Jackson, and Euletia Lynn,

Appellants

_____

Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2-20-cv-11159)
District Judge: Honorable Katharine S. Hayden

_____

Argued on June 5, 2024

Before: HARDIMAN, PORTER, and AMBRO, <u>Circuit
Judges</u>

(Opinion filed: August 29, 2024)

Ashley C. Honold
United States Department of Justice
Civil Division Appellate
Room 7261
950 Pennsylvania Avenue NW
Room 7323
Washington, DC 20530

Casen Ross **[Argued]**
United States Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Washington, DC 20530

Alan Ruddy
Essex County Counsel
465 Martin Luther King Boulevard
Hall of Record, Room 535
Newark, NJ  07102

Counsel for Appellants


Tisha N. Adams **[Argued]**
Suite 1103
60 Park Place
Newark, NJ 07102

Christopher N. Leeds
Cipriani & Werner
485 Route 1 S
Suite 120, Building E
Iselin, NJ 08830

Claudia M. Tesoro
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

Jeffrey S. McClain
Holtzman McClain & Londar
3000 Atrium Way
Suite 200, PMB #319
Mount Laurel, NJ 08054

      Counsel for Appellees

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Plaintiff Judith Maureen Henry was arrested on a warrant for a different woman with the same name. She was detained for more than two weeks for a crime she did not commit. After release, Henry sued many federal and state officials for their roles in the mix-up. Among the defendants, six deputy United States Marshals (the "Marshals") filed a motion to dismiss. They argued their qualified immunity from her suit, that Henry could not pursue her claims under the cause of action announced in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and that her complaint failed to state claims against them. The District Court denied the Marshals' motion. They appeal to us. We reverse, as the facts in Henry's case are far afield from those the Supreme Court faced when it decided *Bivens*.

# I. Background

## A. Henry's Claims

As this is an appeal from an order denying a motion to dismiss, we presume the non-conclusory allegations in the operative Third Amended Complaint ("TAC") are true and recite them here. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In 1993, a different woman named Judith Maureen Henry (the "Absconder") skipped parole in Pennsylvania.[1]

Fast forward to 2019, when the director of the Pennsylvania Interstate Parole Services issued a warrant for the Absconder's arrest for the parole violation. That warrant, however, targeted Henry's home address and attached her driver's license photo. Parole Services forwarded the warrant to officials in New Jersey.

Certain Marshals, along with New Jersey officials, "discussed and planned" Henry's apprehension. App. 47. Those Marshals, along with others, arrested Henry at her home on the morning of August 22, 2019. They transported her to the Essex County Correctional Facility and assisted with her booking that day. Henry repeatedly told the Marshals and others that she was innocent. She offers no non-conclusory allegations that the Marshals were involved in her detention after that point.

---

[1] While not discussed in the TAC, Henry's papers state that the Absconder "pled guilty to possession of cocaine and drug paraphernalia and nolo contendere for the offense [of] conspiracy to deliver" cocaine. Henry Br. 2.

Henry was held in New Jersey until September 1, when she was transferred to Pennsylvania. Throughout her detention, she continued to declare her innocence and requested that authorities compare her fingerprints to the Absconder's. But no official did so until Henry reached Pennsylvania. Officials there discovered on September 3 that Henry's fingerprints did not match those of the Absconder. Yet her detention continued for another two days before she was released on September 5. This means Henry was imprisoned for more than two weeks for the Absconder's parole violation.

## B. Procedural History

In August 2020, Henry sued several individuals and entities, including the United States Marshals Service (but not the Marshals themselves). She named the Marshals, both in their personal and official capacities, as defendants for the first time in the TAC, filed in December 2021. (Henry's claims against the Marshals in their official capacity were later dismissed with prejudice. As noted, the Marshals filed a motion to dismiss, arguing that they were protected by qualified immunity, Henry's claims impermissibly extended the *Bivens* doctrine, and she failed to state a claim under Rule 12(b)(6). In an oral ruling, the District Court rejected those arguments for want of factual development. The Marshals timely appealed to us.

## II. Analysis

### A. Jurisdiction

The District Court had jurisdiction over Henry's claims under 28 U.S.C. §§ 1331, 1343(a) & 1367. We have jurisdiction over the Marshals' appeal. That is because we can immediately review decisions denying qualified immunity when they turn solely on issues of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 671-72 (2009). Our jurisdiction lets us examine the "sufficiency of [Henry's] pleadings," *id.* at 673, and whether her claims can be pursued through a *Bivens* action at all. *Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007). This is so because the recognition of *Bivens* claims and sufficiency of Henry's allegations are "directly implicated by the defense of qualified immunity and [so are] properly before us on interlocutory appeal." *Hartman v. Moore*, 547 U.S. 250, 257 n.5 (2006).

### B. The District Court's Analysis Was Incorrect.

Whether a complaint pleads allegations that overcome qualified immunity or fall with the limits of the cause of action created in *Bivens* is a purely legal issue that can be resolved on the pleadings at the motion-to-dismiss stage. *See, e.g.*, *Hernandez v. Mesa*, 589 U.S. 93, 98-99 (2020) (*Bivens*); *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (qualified immunity). A complaint must be dismissed if, viewed in the generous light our precedent offers, it lacks sufficient factual allegations to state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In this context, further record development is not the way to proceed. Accordingly, we review whether the TAC can proceed against the Marshals as a matter of law.

8

## C. Henry's *Bivens* Claims Must Be Dismissed.

The core of the TAC is that Henry's treatment violated the Constitution's guarantees. Through 42 U.S.C. § 1983, Congress provided an action against persons who, "under color of state law," violate a plaintiff's constitutional rights. *West v. Atkins*, 487 U.S. 42, 48 (1988). There is no federal statutory cause of action against persons who, acting under color of *federal* law, violate a plaintiff's constitutional rights. But in *Bivens* the Supreme Court authorized such a cause of action under the circumstances presented there. 403 U.S. at 395-97.

So the first question before us is whether the Marshals were acting under color of state or federal law when they apprehended Henry on a Pennsylvania warrant for violating Pennsylvania law. Perhaps complicating the analysis, two of them were New Jersey state law enforcement officers deputized to serve as Marshals. 5 U.S.C. § 3374; 28 C.F.R. § 0.112(b). Persons with arguably mixed federal and state authority act under color of federal law when they perform their federal duties. *Yassin v. Weyker*, 39 F.4th 1086, 1090-91 (8th Cir. 2022) (quoting *Johnson v. Phillips*, 664 F.3d 232, 240 (8th Cir. 2011)), *cert. denied*, 143 S.Ct. 779 (2023); *King v. United States*, 917 F.3d 409, 433-34 (6th Cir. 2019), *rev'd on other grounds sub. nom. Brownback v. King*, 592 U.S. 209 (2021).

Henry concedes that the Marshals—including those deputized as-such—operated under color of federal law. The

9

Government agrees, and so do we. Hence we analyze Henry's claims under *Bivens*, not § 1983.[2]

The current state of *Bivens* jurisprudence has been thoughtfully analyzed by other decisions in this Circuit, and we have little to add. *See, e.g.*, *Xi v. Haugen*, 68 F.4th 824, 832-34 (3d Cir. 2023); *see also Vanderklok v. United States*, 868 F.3d 189, 198-200 (3d Cir. 2017). To set the table, the Supreme Court, concerned with separation of powers, has made clear that it is generally not the judiciary's place to create causes of action. *Egbert v. Boule*, 596 U.S. 482, 491 (2022); *Hernandez*, 589 U.S. at 99-102. The rules it announced for *Bivens* claims reflect this hesitation. We first ask whether a plaintiff's claim under *Bivens* presents a "new context" compared to the three cases where that Court explicitly authorized a *Bivens* remedy. *Hernandez*, 589 U.S. at 102 (citation omitted). When the context is distinguishable, we do not authorize such an action if we see any "reason to pause before applying *Bivens* in [the] new context[.]" *Id.* Thus, we turn to that analysis.

"[O]ur understanding of a 'new context' is broad." *Id.* A context is new if it "is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). Whether a context is new is an "easily satisfied" test because "a modest extension [of the *Bivens* action] is still an extension." *Id.* at 147-49. Even

---

[2] The TAC never mentions *Bivens*; rather, it repeatedly references § 1983. But Henry's argument before us is that she has *Bivens* claims against the Marshals. The Government addresses the merits of that argument rather than arguing the TAC must be amended, and we will too.

"significant parallels to one of the [Supreme] Court's previous *Bivens* cases" may not be enough.  *Id*. at 147.

We begin by summarizing the TAC, which identifies six *Bivens* claims.  The first is for abuse of process that Henry bases on her arrest by the Marshals (claimed to be "neither warranted nor authorized by law"), TAC ¶ 42, and their failure to "check the fingerprints, photograph, and other personal identifiers of the [Absconder] with those of [Henry.]"  *Id.* at ¶ 49.  Second is a claim for false arrest and imprisonment, again based on Henry's arrest and detention in New Jersey "[d]espite repeated protests of innocence."  *Id.* at ¶ 53.  The third claim is for intentional infliction of emotional distress traced to the method of her arrest.  Fourth is a failure-to-train and failure-to-supervise claim against certain supervisory Marshals who allegedly did not train the arresting Marshals to take fingerprints and other identifying information from apprehended suspects or promptly present arrestees to magistrates.  The fifth count, which complains of procedural due process violations under the Fourteenth Amendment, faults the Marshals for not presenting Henry to a judge before she was taken to Pennsylvania.  Sixth and finally, Henry alleges the Marshals were involved in a conspiracy against her.

The only Supreme Court case authorizing a *Bivens* remedy for police misconduct is *Bivens* itself.  *Ziglar*, 582 U.S at 131.[3]  The complaint in *Bivens* alleged that the plaintiff was

---

[3] *See Davis v. Passman*, 442 U.S. 228 (1979) (authorizing *Bivens* claim for workplace sex discrimination by a Congressman in violation of the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (approving *Bivens* suit bottomed on

11

invalidly subject to a warrantless arrest in his home. 403 U.S. at 389. We do not read Henry's complaint as sufficiently alleging that state of affairs. Though Henry claims her arrest was without a valid warrant and contrary to law, *see, e.g.*, TAC ¶ 42, the opposite is true.[4]

She appears to admit that the Absconder is, in fact, guilty of parole violations. Henry Br. 2. That statement means the warrant was valid: at least for purposes of this litigation, Henry's briefing establishes that there is more than a "fair probability" the Absconder violated the conditions of her parole. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 369, 401 (3d Cir. 1997)).

And Henry's mistaken-identity arrest was similarly constitutionally valid. "[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802 (1971) (citation omitted); *Rodriguez v. Farrell*, 280 F.3d 1341, 1345-46 (11th Cir. 2002). The Pennsylvania Board of Probation and Parole provided the Marshals with Henry's address and photograph. Henry identifies no reason why the Marshals should not have relied on that information. *Cf. Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272-73 (3d Cir. 2000) ("Ordinarily, it is reasonable for an officer to assume that a

failure to provide prisoner medical treatment in violation of Eighth Amendment).

[4] Henry's claim is a "legal conclusion" not entitled to deference on Rule 12(b)(6) review. *Iqbal*, 556 U.S. at 678-79.

warrant has been issued for probable cause" absent substantial evidence suggesting otherwise (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)). So their arrest of Henry relying on information attached to the warrant was a reasonable mistake, and therefore her arrest did not violate the Fourth Amendment.

This fundamental legal distinction between the TAC (which, read in the light most favorable to Henry, suggests that her arrest was both supported by a valid warrant and consistent with the Fourth Amendment) and *Bivens* (which dealt with a complaint that amply alleged serious violations of that Amendment) thus establishes a "meaningful" difference sufficient to make Henry's claims premised on her arrest a new context. *Ziglar*, 582 U.S. at 139. Indeed, "almost parallel circumstances" to *Bivens*—hardly what we have here—can still result in a new context. *Xi*, 68 F.4th at 834 (quoting *Egbert*, 596 U.S. at 495).

As to Henry's other *Bivens* claims, they present a new context because they "concern a different breed of law enforcement misconduct." *Xi*, 68 F.4th at 834. While *Bivens* focused on the conduct of an arrest, Henry challenges the Marshals' post-arrest failure to examine her claims of innocence or present her to a magistrate—a different "sort[] of action" by the Marshals, *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019), that "bear[s] little resemblance" to the alleged police misconduct in *Bivens*, and accordingly results in a new context. *Ziglar*, 582 U.S. at 140. That same logic applies to her failure to supervise[5] and conspiracy claims.

_____

[5] They are also in a new context because they target supervisory officials rather than line officers. *Ziglar*, 582 U.S.

13

Because Henry's *Bivens* claims arise in a new context, we can allow them to go forward only if we do not doubt that we are at least as capable as Congress of "weigh[ing] the costs and benefits of allowing a damages action to proceed." *Ziglar*, 582 U.S. at 136. "[E]ven a single 'reason to pause'" prohibits recognition of a *Bivens* action in a new context. *Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 589 U.S. at 102).

A reason to pause here is the "risk" of "interfere[nce]" with "the executive branch's investigative . . . function[]." *Annappareddy v. Pascale*, 996 F.3d 120, 137 (4th Cir. 2021) (citing *Ziglar*, 582 U.S. at 141); *Ahmed v. Weyker*, 984 F.3d 564, 570-71 (8th Cir. 2020), *cert. denied sub. nom Mohamud v. Weyker*, 142 S.Ct. 2833 (2022). Henry's complaint—that the Marshals failed to take her claims of innocence seriously—raises a host of policy questions about the role of the Marshals Service after they apprehend a suspect on a warrant for a crime they did not investigate. To name but four of these questions we see: How strong must a claim of innocence announced after arrest be before it must be investigated by a marshal? When, as here, marshals and state law enforcement officers both hear protestations of innocence, which should investigate? How in-depth of an investigation must they perform, and when?

We grant that, asking those questions in this case, a reasonable observer could conclude the answers are not hard to find and would impose minimal burdens on the Marshals. Henry's request was modest: merely that her fingerprints be compared to the Absconder's. But it is for Congress, not the judiciary to "balance[] the costs and benefits" of a cause of

---

at 140 (identifying "the rank of the officers involved" as a "meaningful" difference in our *Bivens* jurisprudence).

14

action against the Marshals bottomed on their failure to investigate Henry's claims of innocence. *Farah*, 926 F.3d at 501. The legislature must decide whether the "potential encroachment" on the executive branch's investigatory function "is worth it." *Id.* Accordingly, concerns for separation of powers counsel hesitation before we endorse a *Bivens* suit in a new context. *Egbert*, 596 U.S. at 491. So we will not do so here.

## C. Henry's Other Claims Also Fail.

The TAC includes two claims that do not rely on *Bivens*. Both fail.

Henry alleges that the Marshals are liable under 42 U.S.C. § 1985(3)[6] because they "conspired to deprive [her] of equal protection under law." TAC ¶ 117. To state a claim under that statute, a plaintiff must show that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (alteration in original)). Henry asserts that her treatment was a result "of her lower economic status," and her race, sex, and national origin (she is "a black woman from Jamaica"). TAC ¶ 59. But we need not accept this bare conclusion, and she offers no other allegations to support it. *Iqbal*, 556 U.S. at 678-79.

---

[6] The TAC does not specify which subsection of 42 U.S.C. § 1985 this count relies on. In her briefing, Henry identifies subsection (3).

15

Henry also brings a cumulative claim under a provision of the New Jersey Civil Rights Act ("NJCRA"), which she says provides her an action against the Marshals for violations of her constitutional rights. N.J.S.A. § 10:6-2(c). In response, the Marshals direct us to the Westfall Act, 102 Stat. 4563-67 (1988), which made the Federal Tort Claims Act "the exclusive remedy for most claims against [federal] Government employees arising out of their official conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010); 28 U.S.C. § 2679(b)(1). Henry offered no counterargument in her papers or at oral argument. The Westfall Act only offers two exceptions to its exclusivity—one for *Bivens* actions, and the other for actions under federal statutes. 28 U.S.C. § 2679(b)(2); *United States v. Smith*, 499 U.S. 160, 166-67 (1991). A suit under the NJCRA fits neither.[7]

* * * * *

---

[7] Judge Porter does not join this paragraph holding that Henry lacks a converse-1983 cause of action under New Jersey law because the NJCRA creates a remedy for violations of substantive constitutional rights committed by "person[s] acting under color of law," and the Marshals were "acting under color of [federal] law" in connection with Henry's arrest. N.J.S.A. § 10:6-2(c). Judge Porter is not confident that the Westfall Act bars suits "brought for a violation of the Constitution of the United States" like Henry's. 28 U.S.C. § 2679(b)(2)(A). But even if Henry has a cause of action under the NJCRA, Judge Porter would reverse because "Henry's mistaken-identity arrest was . . . constitutionally valid" and the Marshals are thus entitled to qualified immunity. Part II.B, *supra*.

16

We thus reverse the order of the District Court denying the Marshals' motion to dismiss and remand to that Court for it to dismiss Henry's claims against the Marshals.